# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, et al.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES INTERNATIONAL BOUNDARY AND WATER COMMISSION, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:24-cv-663-JES-VET<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>**[ECF No. 13]** |

Pending before the Court is Defendant Veolia Water West Operating Services, Inc.'s ("Veolia") motion to dismiss. ECF No. 13. Plaintiffs filed an opposition, and Veolia filed a reply.[1] ECF Nos. 20, 23. On October 16, 2024, the Court held a hearing and took the matter under submission. ECF No. 30. After due consideration and for the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Veolia's motion to dismiss.

//

---

[1] The other defendants in the matter, the United States International Boundary and Water Commission ("IBWC") and Maria-Elena Giner in her official capacity as Commissioner of the IBWC, filed a response to the motion as well, stating that they take no position on the motion. ECF No. 19.

1

## I. BACKGROUND

This is a civil lawsuit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). ECF No. 1 ¶ 1. Plaintiffs San Diego Coastkeeper ("Coastkeeper") and Coastal Environment Rights Foundation ("CERF") are non-profit organizations located in San Diego that focus on protecting and restoring coastal waters and resources and the communities that depend on them. *Id.* ¶¶ 38-39. Plaintiffs sue the IBWC and Veolia as alleged owners of the South Bay International Wastewater Treatment Plant ("SBIWTP") and associated canyon collector systems and structures (collectively, "the Facility"). *Id.* ¶ 2.

Plaintiffs allege that Defendants have a long history of discharging pollutants into the Tijuana River and Estuary and the Pacific Ocean, in violation of the Clean Water Act. Pursuant to a treaty between the United States and Mexico, two entities were established to preside over water quality issues of rivers and streams at the US/Mexico border—the IBWC on the United States side and La Comision Internacional de Limites y Aguas ("CILA") on the Mexican side. *Id.* ¶ 14. Plaintiffs allege that IBWC, through the Facility, is to intercept and treat dry weather wastewater flows from Mexico, divert them to the SBIWTP, and treat them before discharging them to the ocean. *Id.* ¶ 15.

Under the Clean Water Act, point source discharges of pollutants of navigable waters are regulated by National Pollutant Discharge Elimination System Permits ("NPDES"). *Id.* ¶¶ 2, 46. The EPA delegated NPDES permitting authority to California, with the San Diego Regional Water Quality Control Board (the "Board") serving as the state regulatory agency that issued the NPDES permit governing the Facility's operations and discharges.[2] *Id.* ¶ 2, 52. Plaintiffs allege that the Permit includes provisions that govern:

---

[2] The NPDES permit regulating the Facility are as alleged NPDES Order No. R9-2014-0009, NPDES No. CA0108928, and Order No. R9-2021-0001, NPDES No. CA0108928, as amended by Order No. R9-2023-0009 (the "Permit").

(1) Effluent Limitations; (2) Receiving Water Limitations; (3) Discharge Prohibitions; (4) Reporting Requirements for the Self-Monitoring Reports; (5) requirement to provide access to regional scientific studies; and (6) Tijuana River Valley Monitoring Report ("TRVMP") submission requirements. *Id.* ¶ 56.

On December 18, 2023, the Board issued an order to address non-compliance with the Permit's effluent limitations. ECF No. 13-1 at 7. The Board originally set a deadline of August 15, 2024, for the IBWC to come into compliance with the Permit's effluent limitations. *Id.* The Board continues to monitor compliance under the Permit, and the parties have filed status reports with the Court updating on the status of the compliance. ECF Nos. 26, 28-29, 33-36, 39.

On January 30, 2024, Plaintiffs issued a notice letter of intent to sue regarding the NPDES permit. *Id.* ¶ 2-3, Exs. 1, 2. On April 11, 1024, Plaintiffs filed the complaint in this case. *Id.* Plaintiffs allege five causes of action: (1) Discharges of Waste in violation of the Permit's Effluent Limitations; (2) Discharges in violation of the Permit's Section 3 Discharge Prohibits; (3) Discharges in violation of the Permit's Receiving Water Limitations in Section 5; (4) Failure to submit Self-monitoring reports; (5) Failure to submit the TRVMP Within 90 Days of the Effective Date of Order No. R9-2021-0001. *Id.* ¶¶ 154-198.

Since its filing, the parties and the Court have held several hearings in this case, and its current procedural posture is that Claim 1 is stayed pending a rain event, Claim 3 is stayed pending the Supreme Court case *San Francisco v. Environmental Protection Agency*, Claim 2 is stayed to the extent it overlaps with Claim 3. Claim 2 is otherwise not stayed and the stay on Claim 5 has been lifted.

Pending now before the Court is Veolia's motion to dismiss. Veolia brings the motion to dismiss under several grounds. First, Veolia challenges whether this Court has subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Second, Veolia challenges the complaint for failure to state a claim against it under Federal Rule of Civil

1  Procedure 12(b)(6). Finally, Veolia argues that the first and fifth claims should be
2  dismissed under the primary jurisdiction doctrine or under ripeness.

## II.   REQUEST FOR JUDICIAL NOTICE

Related to this motion, Veolia requests that the Court take judicial notice of several documents: (1) the NPDES Permit attached as Exhibit 1 to Plaintiffs' complaint and (2) the December 2023 Time Schedule Order ("TSO") issued by the Board attached as Exhibit C to the Declaration of Rebecca Roberts. ECF No. 13-4. In their opposition to the motion, Plaintiffs object to taking judicial notice of the TSO. ECF No. 20 at 29-30. Plaintiffs also object to consideration of Exhibits A, B, D, and E attached to the Roberts Declaration as facts and documents outside the complaint that are not properly considered on a motion to dismiss. *Id.* These exhibits are generally orders, meeting minutes, and reports issued by the Board. *See* ECF No. 13-2 at ¶¶ 2, 3, 5, 6.

In turn, Plaintiffs request that the Court take judicial notice of Exhibits 3, 7, 9, 10, 11, 12, 13, 14, 15, and 16 submitted in support of their opposition to the motion. ECF No. 20-3. These exhibits generally appear to be documents (such as reports, logs, announcements, violations) from the IBWC or the Board. *Id.* Two of the exhibits, Exhibits 13 and 14, are Statements of Information from two Veolia entities downloaded from the California Secretary of State's website. *Id.* Veolia argues that the Court may take judicial notice of the existence of the documents, their dates, and the existence of the contents within, but not the truth of the matter asserted within because the facts are under dispute. ECF No. 23 at 3-5.

On a motion to dismiss, a "court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). However, courts may not take judicial notice of a fact that is "subject to reasonable dispute." Fed. R. Evid 201(b). Consistent with this line, courts often take judicial notice of the existence of documents but not take notice of the factual truth of the contents, if those are subject to reasonable dispute. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1000 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not

mean that every assertion of fact within that document is judicially noticeable for its truth."); *see also EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1322 (C.D. Cal. 2023) (taking notice of government website but not of factual truth of contents); *United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004).

The Court takes judicial notice of the documents requested by the parties as they generally appear to be documents related to administrative proceedings before the Board. However, for these documents, the Court does not rely on the factual contents and statements from these documents to resolve this motion and declines to take judicial notice of all facts contained therein. For the two exhibits that are from the California Secretary of States website, the Court takes judicial notice of the full documents. *No Cost Conf., Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1296 (S.D. Cal. 2013) ("The printout from the Secretary of State's website is subject to judicial notice as a public record and as containing facts the accuracy of which cannot reasonably be disputed."). Accordingly, the request for judicial notice is **GRANTED IN PART** and **DENIED IN PART**.

### III. MOTION TO DISMISS UNDER 12(b)(1)

Veolia first argues that this Court lacks subject matter jurisdiction over it because Plaintiffs failed to provide adequate notice under the CWA.

#### A. Legal Standard

Dismissal pursuant to Rule 12(b)(1) is appropriate when either the complaint or evidence extrinsic to the complaint demonstrates that the court lacks subject matter jurisdiction over the action. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Rule 12(b)(1) jurisdictional challenges can be either factual or facial. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In

resolving a factual challenge, a district court may review evidence extrinsic to the complaint. *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). In a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations. *Safe Air*, 373 F.3d at 1039.

The CWA requires that any person or organization bringing a citizen suit to provide 60-days notice to "any alleged violator of the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(A). This notice requirement is considered a jurisdictional requirement before the Court may hear claims brought pursuant to that notice. *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009) ("[T]he giving of a 60–day notice is not simply a desideratum; it is a jurisdictional necessity.").

Regulations promulgated by the EPA set forth the information that must be provided in the pre-suit notice:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3.

The Ninth Circuit has "strictly construed" the CWA's notice requirements. *See Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 31 (1989); *Nat. Res. Defense Council v. Sw. Marine, Inc.*, 236 F.3d 985, 998 (9th Cir. 2000). The "Ninth Circuit, even at its most lenient, requires notice to inform the targeted party 'precisely what it allegedly did wrong, and when.'" *San Francisco Herring Assoc. v. Pac. Gas & Elec. Co.*, 81 F. Supp. 3d 847, 857 (N.D. Cal. 2015) (citation omitted). Conversely, plaintiffs do not need to "'list every specific aspect or detail of every alleged violation'" but only needs to be "reasonably specific" as to the nature and time of the alleged violation. *Id.* The question of whether the notice requirement has been met "turns on the overall sufficiency of the notice." *Klamath-*

*Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015) (citation and internal quotation marks omitted).

### B.     Analysis

Veolia argues that the notice is not sufficient for several reasons. First, Veolia argues that the notice does not name the proper entity, Veolia Water West Operating Services, Inc. ECF No. 13-1 at 20. Second, Veolia argues that the notice letter was only addressed to the IBWC Commissioner, Giner, and only puts the IBWC on notice, not Veolia. *Id.* Third, Veolia alleges that while the notice letter alleges various permit violations, it fails to explain why Veolia is subject to the Permit and what Veolia specifically did wrong. *Id.* at 20-21. Finally, Veolia argues that the letter does not put it on notice that it could be subject to civil penalties. *Id.* at 21.

The notice letter was addressed to the following entities:

| | |
|---|---|
| Maria-Elena Giner, Commissioner<br>International Boundary & Water Commission<br>United States Section<br>4191 North Mesa St.<br>El Paso, TX 79902<br><br>South Bay International Treatment Plant<br>2995 Clearwater Way<br>San Diego, CA 92154 | Veolia Water North America–West, LLC<br>PO Box 430239<br>San Diego, CA 92143<br><br>Veolia Water North America-West LLC<br>Agent for Service of Process<br>CT Corporation system<br>330 N. Brand Blvd,<br>Glendale, CA 91203 |

As to the first argument, the entity that the notice letter is directed to is Veolia Water North America-West, LLC, rather than Veolia Water West Operating Services, Inc. Plaintiffs argue that this argument puts form over function—because Veolia Water West had enough information to identify itself as the responsible party. ECF No. 20 at 14. Plaintiffs submit a declaration stating that the two entities share the same Chief Executive Officer, registered agent, principal address, and mailing address. *Id.* at 14-15.

The Court finds the case *Puget Soundkeeper Alliance v. Louis Dreyfus Commodities LLC*, No. C14-803RAJ, 2016 WL 7718644 (W.D. Wash. Mar. 11, 2016), to be instructive.

1. That court considered "whether proper service of a notice of intent to sue on one member of a group of related corporate entities sharing the same address and registered agent may serve as proper service as to all of the alleged violators within that group." *Id.* at *4. The court noted that the CWA's requirement should be strictly construed but weighed this against whether it would be "exceedingly formalistic" to permit the interrelated companies to "dodge" notice. *Id.* The court surveyed district court cases within this Circuit on both sides. *Id.* at *5. Ultimately, the court sided with the plaintiff, finding the notice addressed to one of the entities "sufficed to give the Defendants a reasonable opportunity to identify which of them was the responsible owner or operator at the time of the violations," giving them a "fair and reasonable opportunity to remediate any problems identified in the notices." *Id.* at *6. The court found that this result served the primary purposes driving the CWA's notice requirement and was supported by practical policy. *Id.* ("Elevating form over substance and finding improper service where interrelated corporations share common ownership, registered agents, and mailing addresses could encourage shell games to frustrate proper service."). The Court finds that the same reasoning applies here.

As to the second argument, that the letter was addressed only to IBWC Commissioner, Giner, and only puts the IBWC on notice, the Court is also unpersuaded. Even though the greeting of the letter does state "Dear Commissioner Giner," as stated above, the letter was served on the Veolia entity. *See* ECF No. 1-2 at 1. Further, the first paragraph of the letter states that the letter is "regarding the United States Section of the International Boundary & Water Commission and Veolia Water North America – West LLC (collectively 'IBWC') violations of the Clean Water Act" and lists the NPDES permits at issue. *Id.* Thus, despite the greeting, a Veolia entity received the letter through its agent for service of process and the remainder of the letter should put it on notice that the letter is also directed at it, not just IBWC. Finding otherwise would also put form over function for the notice letter requirement. *See Waste Action Project v. First Student, Inc.*, No. 3:23-CV-05084-DGE, 2023 WL 4296515, at *5 (W.D. Wash. June 30, 2023) (finding letter served purpose even where it "was not directly addressed to [defendant], [defendant]

accepted service of the letter and the letter clearly indicated violations of specific permit conditions with which [defendant] was involved and for which it could face potential liability").

As to the third argument, Veolia argues that the notice letter does not explain why it is subject to the permit and what it specifically did wrong. Relevant to this argument, courts have distinguished the CWA's notice requirement from Rule 12(b)(6) pleading standards.[3] *Waste Action Project*, 2023 WL 4296515, at *6. The EPA regulations require that the notice letter "include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated" and "the activity alleged to constitute a violation." 40 C.F.R. § 135.3(a). These requirements serve dual purposes: (1) allowing "Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits[;]" and (2) giving "the alleged violator 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989) (cleaned up). With these purposes in mind, the notice letter "require[s] no more than 'reasonable specificity.'" *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002); *see Paolino v. JF Realty*, LLC, 710 F.3d 31, 40 (1st Cir. 2013) (letter must give sufficient details for "*the defendants* to determine each other's responsibility for the individual violations") (emphasis in original).

Here, it is true that the notice letter generally attempts to collectively treat IBWC and Veolia. ECF No. 1-2 at 1 (referencing both entities collectively as "IBWC"). The letter does state the relationship between the two—that IBWC contracts with Veolia to "operate and maintain the Facility." *Id.* at 2. In other places in the notice letter, Plaintiffs state that Veolia and IBWC collectively own and control the facilities and equipment. *See, e.g.*, *id.* at 8 ("IBWC and Veolia own and/or exercise control over pipes and conveyances between

---

[3] Veolia also raises a Rule 12(b)(6) ground for dismissal, which the Court will separately address below in this order.

1 diversion structures, pump stations, and the wastewater treatment plant. . . . As such, IBWC and Veolia control the operation and maintenance of the canyon collector systems and have a measure of control over the waste"); *id.* at 16 ("IBWC and Veolia, as owners and/or operators of the Facility, have failed, and continue to fail, to properly operate and maintain the Facility."). Notably, Veolia does not appear to argue that the notice letter generally fails to give sufficient information to identify the permits or violations at issue, but only that it did not sufficiently identify Veolia's role. However, the regulations do not appear to require that level of specificity in the notice letter. The notice letter appears to sufficiently identify the violations that put the defendants collectively on notice of the violations and therefore, an opportunity to bring itself in compliance. *See Paolino*, 710 F.3d at 40 (notice sufficient because defendants themselves could figure out who was responsible at what time for the violations identified); *San Francisco BayKeeper*, 309 F.3d at 1158 (lack of exact dates did not defeat sufficient notice because it permitted the recipients to identify the dates at issue).

Finally, as to the fourth argument, Veolia argues that the notice letter also fails because it does state that it could be subject to civil penalties. Plaintiffs counter that the regulations do not require the citizen suitor to list all potential remedies. ECF No. 20 at 17. Further, Plaintiffs point out that the cases Veolia cites only support the proposition that the plaintiff could only seek civil penalties for violations identified in the notice letter, not that the notice letter was insufficient. *Id.* The Court agrees. Failure to specifically state that Veolia may be subject to civil penalties in a notice letter does not defeat the sufficiency of the notice letter itself.

Accordingly, for the reasons stated above, the Court finds that the notice letter is sufficient as to Veolia and **DENIES** the motion to dismiss for lack of jurisdiction.

//
//
//
//
//

## IV.   MOTION TO DISMISS UNDER 12(b)(6)

Veolia next argues that the complaint should be dismissed against it for failure to state a claim under Rule 12(b)(6).

### A.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 556 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 557 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reversed and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 557 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

//
//
//

3:24-cv-663-JES-VET

### C. Analysis

Veolia argues that the complaint impermissibly collectively references the defendants together and does not set forth the liability for each defendant. ECF No. 13-1 at 22-23. The allegations referencing Veolia specifically in the complaint are as follows:

> ¶ 8: USIBWC and Veolia have discharged and continue to discharge pollutants such as fecal bacteria, contaminated sediment, heavy metals, and toxic chemicals, some of which have been banned in the United States such as DDT, Benzidine, and Polychlorinated Biphenyls ("PCBs"), into the Tijuana River and Estuary, and the Pacific Ocean (collectively "Receiving Waters") in violation of the express terms and conditions of the Permit and Clean Water Act, 33 U.S.C. Section 1342.
>
> ¶ 36: Veolia is an active Delaware Limited Liability Company and at all relevant times the Operator of Facility. Veolia contracts with USIBWC to operate and maintain the SBIWTP and its associated infrastructure in San Diego, California.
>
> ¶ 93: USIBWC contracts with Veolia to operate and maintain the Facility
>
> ¶ 126: USIBWC and Veolia, as owners and/or operators of the Facility, have failed, and continue to fail, to properly operate and maintain the Facility.

ECF No. 1.

As noted above, courts have differentiated between the standards for a sufficient notice letter as compared to sufficiency of the allegations of a complaint under Rule 12(b)(6). "Allowing a court to draw reasonable inferences from a pleading as to a defendant's potential liability is different than the notice necessary to inform the appropriate agencies of the alleged violations under the CWA." *Waste Action Project*, 2023 WL 4296515, at *6. In that case, even though the notice letter was found to be sufficient, the complaint was dismissed under 12(b)(6) because the complaint referenced the defendants collectively. The court relied on cases that permit such "shotgun pleading" where defendants are not distinguished. *Id.* at *7 (collecting cases that granted motions to dismiss where the complaint failed to make a distinction between the various defendants and who committed which actions).

The Court finds that the complaint here warrants the same result. The conflating of Veolia with IBWC amounts to impermissible shotgun pleading. However, the Court will grant Plaintiff an opportunity to amend the complaint. *See* Fed. R. Civ. P. 12(a)(2) (the court should "freely give leave [to amend] when justice so requires"). In its opposition to the motion to dismiss, Plaintiffs identified various allegations they would add to the complaint to clarify the allegations against Veolia individually. *See* ECF No. 20 at 21. Accordingly, the Court **GRANTS** Veolia's motion to dismiss the complaint against it under Rule 12(b)(6) and also **GRANTS** Plaintiffs leave to amend the complaint to add specific allegations against Veolia. The amended complaint must be filed **within 21 days of this order.**

## V. PRIMARY JURISDICTION AND RIPENESS

Veolia next argues that Claims 1 and 5 should be dismissed under the primary jurisdiction doctrine and ripeness.

### A. Legal Standard

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). When evaluating whether this doctrine should apply to a case, the court should consider the following: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).

The question is not whether the case will invoke the expertise of the federal agencies, but it is applied in a "limited set of circumstances that requires resolution of an issue of first impressions, or of a particularly complicated issue that Congress has committed to a

regulatory agency." *Astiana*, 783 F.3d at 760 (citation and quotation marks omitted). Practically, the court should also consider if invoking the doctrine would "needlessly delay the resolution of the claims." *Id.* The choice to invoke the doctrine is in the sound discretion of the district court. *Syntek*, 307 F.3d at 781. If a court were to find primary jurisdiction to be appropriate, it may choose to either stay the proceedings or dismiss the case. *Astiana*, 783 F.3d at 761 ("When the purpose of primary jurisdiction is for 'parties [to] pursue their administrative remedies,' a district court will '[n]ormally' dismiss the case without prejudice. However, when a court invokes primary jurisdiction 'but further judicial proceedings are contemplated, then jurisdiction should be retained by a stay of proceedings, not relinquished by a dismissal.'") (citation omitted).

Ripeness prevents the courts from issuing advisory opinions and declaring rights in hypothetical cases, but to limit themselves to adjudicating "live cases or controversies." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). The ripeness inquiry consists of two components. *Id.* First, the constitutional component is temporal in scope, asking whether there exists a "constitutional case or controversy, that the issues presented are definite and concrete, not hypothetical or abstract, . . . [and] whether the plaintiffs face a realistic danger of sustaining a direct injury." *Id.* (cleaned up). Second, the prudential component considers "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 1141. ripeness.

**B.  Analysis**

With regards to Claims 1 and 5, the Court finds it prudent to review the litigation history so far on these claims. Previously, Defendant IBWC moved to stay the same two claims. ECF No. 15. The basis of that request was so that the Board's enforcement proceedings could proceed, eliminating duplicative effort and potentially conflicting actions, so that the issues could be limited before proceeding in front of this Court. The Court granted the initial motion to stay, and has since partially extended the stays. Currently, Claim 1 is stayed pending a rain event and the original stay on Claim 5 was lifted. In its latest joint status report to the Court, the parties represent that they have met

and conferred on Claim 5 and that they expect it to drop out of the case when IBWC commences water quality sampling pursuant to its TRVMP Plan. ECF No. 39. On Claim 1, the Court has another hearing set for March 26, 2025, where the parties will update the Court on if a rain event has occurred in San Diego, to evaluate whether that claim should proceed.

Given this procedural posture, the Court finds that a continued stay, with periodic status updates from the parties like they have provided so far, is the appropriate way to proceed with these claims. Even though the previous stay on the claims were granted based on a different legal theory rather than primary jurisdiction, similar considerations apply. The effluent limitations issue is currently in front of the Board and efficiency dictates that what this Court has to address could be limited after a stay pending those results. A stay also balances the interests of efficiency with still providing an avenue for Plaintiffs to pursue their rights should the issues not fully be resolved by the Board.

As to Veolia's ripeness arguments, the arguments that Veolia makes in support of its position that these claims are not ripe also center around the idea that the Board is monitoring the alleged violations already. Veolia argues that until the Board's remediation plan is implemented, it is not clear how post-remediation effluent discharges will be calculated, and that this case would interfere with the Board's management of a CWA issue. The Court is not persuaded that these arguments go to ripeness. The effluent limitation violations that were included in the notice letter and in the complaint have already occurred, and Plaintiffs allege injury from these violations. Even though the Board is currently implementing a remediation plan, this does not make the matter not ripe, particularly where the CWA itself permits citizen suits. Again, a stay such as the one that is already in place, is an appropriate way to balance the interests at issue.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Veolia's motion to dismiss Claim 1 and 5 on these grounds. The stay on Claim 1 remains in effect as previously set. Claim 5 remains no longer stayed, but given the parties representation to the Court that the Claim 5 will drop out of the case when the IBWC commences water

quality sampling pursuant to the TRVMP Plan, the Court will not dismiss this claim now and will wait for the parties to make the request at the appropriate time.

## VI.  MOTION TO STRIKE

Finally, Veolia requests that, if the Court does not dismiss the complaint, that it strike the allegations regarding civil penalties (in the operative complaint, paragraphs 161, 168, 180, 189, 196, and 199(d)). ECF No. 13-1 at 28-29. Veolia argues that these allegations should be stricken because the notice regarding civil penalties was insufficient and that Veolia is not the permit holder. *Id.*

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). However, "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Id.* at 974-75. Indeed other courts have held that civil penalties under other federal statutes are damages that are not appropriate to be stricken under Rule 12(f). *See, e.g.*, *Taylor v. Populus Grp., LLC*, No. 20-CV-0473-BAS-DEB, 2020 WL 6131727, at *3 (S.D. Cal. Oct. 19, 2020) (denying motion to strike PAGA civil penalties because "a Rule 12(f) motion is not a proper vehicle to attack a plaintiff's request for damages"); *Byrd v. Masonite Corp.*, 215 F. Supp. 3d 859, 869-70 (C.D. Cal. 2016) (denying motion to strike UCL penalties where motion to strike was in actuality "an attempt to have certain portions of the complaint dismissed" as a matter of law).

Consistent with the above, a Rule 12(f) motion is not the proper vehicle to dismiss certain allegations in the complaint that relate to damages. Accordingly, the motion to strike Is **DENIED**.

//
//
//
//

## VII. CONCLUSION

After due consideration and for the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Veolia's motion to dismiss. Plaintiffs are permitted to file an amended complaint **within 21 days of this order**. Defendant Veolia must respond to the new amended complaint **within 14 days** if Plaintiff files an amended complaint against it.

**IT IS SO ORDERED.**

Dated:  February 14, 2025

Honorable James E. Simmons Jr.
United States District Judge