# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES INTERNATIONAL BOUNDARY AND WATER COMMISSION, et al.,<br><br>Defendants. | Case No.: 3:24-cv-00663-JES-VET<br><br>**ORDER ON JOINT MOTION RE: DISCOVERY**<br><br>[Doc. No. 45] |

Before the Court is the parties' Joint Motion Regarding Discovery ("Joint Motion"). Doc. No. 45. Therein, the parties stipulate to certain conditions governing discovery procedures, including the production of electronically stored information, in this case. *Id.*

Having reviewed and considered the parties' submissions, and good cause appearing, the Court **GRANTS** the Joint Motion, **ISSUES** this Order ("Order"), and makes enforceable the following terms as submitted and agreed to by the parties, and modified as necessary to comply with the undersigned's Chambers Rules:

# I. DEFINITIONS

1. The terms used in this Order that are also used in the Federal Rules of Civil Procedure have the same meaning that they have under the Federal Rules, unless otherwise provided in this Order. Whenever the terms set forth below are used in this Order, the following definitions apply:

   (a) "Draft," when used to describe either an electronic or hard copy document, means "a preliminary version of a document that has been shared by the author with another person (by e-mail, print, or otherwise) or that the author no longer intends to finalize or to share with another person."

   (b) "Document Family" means a group of related documents including parent and child documents. A parent document is an electronic file that has at least one other electronic file attached to it or embedded within it. A child document is an electronic file that is attached to or embedded within another electronic file.

   (c) "Duplicate," when used to describe either an electronic or hard copy document, means that the document does not show any facial differences, such as the inclusion of highlights, underlining, marginalia, total pages, attachments, markings, revisions, or the inclusion of tracked changes. Differences in system metadata fields, such as date created or modified, that do not affect the face of the document, are not relevant to determining whether the document is a duplicate.

   (d) "ESI" means electronically stored information.

   (e) "Gigabyte" means one billion bytes or 1,000 megabytes.

   (f) "Parties" means the parties to this litigation, including their employees and agents.

   (g) "Policy" means a regular practice at an entity that managers know about and expect to be carried out.

# II. PRESERVATION

2. <u>ESI That Is Not Reasonably Accessible.</u> The following categories of ESI listed below are not reasonably accessible in this litigation:

  (a) Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, data or system mirrors or shadows, or automated generation of versions of files, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;

  (b) Electronic mail sent to or from a smartphone or tablet (e.g., iPad) provided that a copy of such e-mail is routinely saved elsewhere;

  (c) Other electronic data stored on a smartphone or tablet, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere;

  (d) Deleted computer files, whether fragmented or whole (nothing in this Order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

  (e) Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

  (f) Data that is not accessible through the operating system installed on a device;

  (g) Data stored on photocopiers, scanners, and fax machines;

  (h) Server, system, or network logs;

  (i) Electronic data temporarily stored by scientific equipment or attached devices, provided that the data that is ordinarily preserved as part of a laboratory report is, in fact, preserved in its ordinary location and form; and

  (j) Data stored on electronic systems that were no longer in use five years before the Complaint was filed.

 3. Nothing in this Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible.

 4. The Parties need not preserve, for this litigation, the categories of ESI listed in paragraph 2 unless, on the date that this Order is entered, either Party has a Policy that

results in the routine preservation of such ESI, in which case such Party shall continue to preserve such ESI in accordance with its Policy.

5. <u>No Discovery of Material Not Required To Be Preserved</u>. The Parties shall not seek discovery of categories of ESI identified in paragraph 2 above. If any general discovery request is susceptible of a construction that calls for the production of categories of ESI identified in paragraph 2, such items need not be searched for, produced, or identified on a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

6. <u>Use of Documents During Litigation</u>. Notwithstanding any other provision of this Order, the Parties may take any of the following actions with respect to documents and ESI without breaching their duty to preserve documents and ESI:

(a) The Parties may continue to work, in the ordinary course of business, on documents that do not meet the definition of Draft in paragraph 1. However, the Parties shall preserve Draft documents for discovery.

(b) The Parties may move unfiled documents or ESI into files or folders that adhere to an organizational scheme that was created before the Complaint was filed in this matter. Nothing in this paragraph prevents the Parties from implementing an organizational scheme that applies only to documents or ESI created after the Complaint was filed in this matter.

(c) The Parties may delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of lease, provided that the potentially relevant ESI is first copied to a new location in a manner that preserves the data, including metadata, that must be produced pursuant to Section VI of this Order.

(d) The Parties may move data from one device to another, or from one location to another, provided that a copy of the ESI remains accessible in the first location or the new copy is created in a manner that preserves the data, including metadata, that must be produced pursuant to Section VI of this Order.

(e) The Parties may load loose ESI into an enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata fields that must be produced under this Order and does not convert the format of

the ESI in a way that makes it significantly less accessible; or (2) the Parties maintain a copy of the ESI in its native format and make their production from this native file collection.

      (f)    The Parties may upgrade, patch, reprogram, or customize software that stores relevant data, even if such actions alter the way data is maintained, stored, or viewed, provided that the relevant data itself is not altered.

      (g)    The Parties may take any of the following actions with respect to data in a database provided that it is part of the routine use of the database: input additional data; access data; update the software running the database; append new data; and modify existing data.

      (h)    The Parties may edit or take down any data on a publicly accessible internet site.

      (i)    The Parties may add data to an intranet or private website. The Parties may edit or take down any data on an intranet or private website, provided that a copy of the data is made before the change and is preserved for discovery.

      (j)    The Parties may compress, decompress, encrypt, or decrypt data subject to preservation in this matter provided that any data losses during such processes do not result in loss of the metadata required to be produced under this Order or significantly degrade the quality of the data.

      (k)    The Parties may update social media sites but may not take affirmative steps to delete relevant data posted before the filing of the Complaint.

7.    <u>Preservation Does Not Affect Discoverability or Claims of Privilege</u>. By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

8.    <u>Other Preservation Obligations Not Affected</u>. Nothing in this Order affects any obligations of the Parties to preserve documents or information for purposes other than this litigation, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.

### III.   COLLECTION

9. <u>ESI that is not proportional</u>. The broadest possible collection may not be appropriate "to secure the just, speedy, and inexpensive determination" of proceeding. *See* Fed. R. Civ. P. 1. Having considered the amount of discovery that would be proportional to the needs of this case, the Parties agree to the following:

(a)   When collecting ESI from Microsoft 365—including email in the Microsoft cloud, and documents and ESI stored on SharePoint, OneDrive, and Microsoft Teams—the Parties may place any combination of the following limitations on their eDiscovery collections:

(1)   enable de-duplication when collecting Microsoft Exchange content;

(2)   choose an output option that includes all items that meet the search criteria, including the entire Document Family, but does not automatically include an item and its family members merely because the item has unrecognized format, is encrypted, or is not fully indexed for other reasons;

(3)   choose not to collect versions for items on SharePoint, OneDrive, or Teams; or

(4)   exclude "Recoverable Items" folders when collecting or processing email, provided that there is no indication that the custodian has failed to implement or comply with an appropriate and timely litigation hold.

(b)   Nothing in this Order prohibits a party from objecting to discovery requests on account of proportionality.

10.   <u>Hyperlinked documents.</u> If an email or other document or ESI that is responsive to a discovery request includes a hyperlink to another document or source of ESI, the Parties need not collect and produce the hyperlinked material if it does not meet the search and collection criteria: (a) agreed upon by the Parties; or (b) if the Parties have not agreed, disclosed by the producing party. If hyperlinked documents are collected because they independently meet the search and collection criteria, they need not be treated

as part of the Document Family for purposes of Bates numbering or producing metadata, including document load files.

11. <u>Filtering.</u> The Parties may de-NIST electronic files, removing known, traceable software applications in the National Software Reference Library ("NIST List"), available at: https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl/nsrl-download.

12. <u>Deduplication.</u>

 (a) *Deduplication of e-mail*. The Parties may deduplicate e-mail.

 (b) The Parties agree that in this matter there is a rebuttable presumption of evidence that an e-mail correctly addressed to a recipient was actually delivered to that recipient's e-mail inbox. This stipulation does not apply to draft e-mails.

 (c) *Deduplication of ESI other than e-mail*. The Parties shall identify exact duplicates of electronic files other than e-mails that are larger than zero bytes and smaller than two gigabytes. The Parties may, to the extent practicable, produce only one copy for each custodian that has possession or custody of the file.

13. <u>Search Technology</u>.

 (a) If a Party intends to use search terms to limit its collection, review, or production of ESI, it shall meet and confer with the other Parties regarding its protocol for applying search terms.

14. <u>Third-Party Data.</u> The Parties shall meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google or Microsoft, or any social media companies such as Facebook or Twitter.

15. <u>Privileged Materials Located in the Offices of Counsel</u>. The Parties agree that, in response to general discovery requests, the Parties need not collect any privileged or work product material that is located in the offices, electronic devices, and electronic accounts of the U.S. Department of Justice or Coast Law Group LLP (collectively, "Offices of Counsel"). The Parties understand that such materials will not be produced or placed on a privilege log. This paragraph does not apply to any documents, ESI, or tangible things located outside of the Offices of Counsel, even if they are duplicates of materials

located inside the Offices of Counsel. For example, if an attorney sends a privileged e-mail to an employee of a party, the copy of the e-mail located in Offices of Counsel need not be collected, but the copy of the e-mail received by the employee, along with any attachments, must be collected and placed on a privilege log (unless it falls into one of the categories exempt from privilege logging pursuant to Paragraphs 32 and 34).

## IV. PROCESSING

16. The Parties need not extract and process embedded files as though they were separate files, if the Parties are technically able to suppress the extraction of embedded files during processing. After production, a receiving Party may request that native files be produced for documents and ESI that appear to contain embedded files but for which the embedded files are not fully viewable.

## V. REVIEW

**A. 502(d) Order.**

17. The Parties invoke Rules 16(b) and 26(c) of the Federal Rules of Civil Procedure, as well as the protections afforded by Rule 502(d) of the Federal Rules of Evidence. Accordingly, the provisions in Rule 502(b) do not apply to the disclosure of communications or information in discovery in this matter.

18. The prosecution and defense of this action will likely require review and disclosure of large quantities of information and documents, including ESI, through the discovery process. As a result, page-by-page preproduction privilege review would likely impose an undue burden.

19. Each party is entitled to decide the appropriate degree of care to exercise in reviewing materials for privilege, taking into account the volume and sensitivity of the materials, the demands of the litigation, and the resources that the party can make available. Irrespective of the care that is actually exercised in reviewing materials for privilege, disclosure of privileged or protected information or documents in connection with this litigation will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state proceeding—of any claims of attorney-client privilege or work product

protection that the disclosing Party would otherwise be entitled to assert with respect to the information or documents and their subject matter.

20. Because expedited or truncated privilege review may be necessary for the just, speedy, and inexpensive resolution of this matter, the disclosure of privileged or protected information or documents in discovery conducted in this litigation will be deemed unintentional and inadvertent. Such disclosure will not constitute a waiver of the disclosing party's right to claim any privilege or protection, including without limitation the deliberative process privilege, that would have applied to the information or documents or their subject matter but for the disclosure, provided only that the party disclaiming waiver employed procedures reasonably designed to screen out privileged materials.

21. Regardless of whether the procedures to screen out privileged materials were reasonable, the Parties shall not argue, in this forum or any other, that any privileges were waived as a result of disclosures in this litigation.

22. If a Party determines that it has produced a document upon which it wishes to make a claim of privilege, the producing Party shall, within 14 days of making such determination, give all counsel of record notice of the claim of privilege. The notice must identify each such document and the date it was produced. If the producing Party claims that only a portion of a document is privileged, the producing Party shall provide, along with the notice of the claim of privilege, a new copy of the document with the allegedly privileged portions redacted. Any party that complies with this paragraph will be deemed to have taken reasonable steps to rectify disclosures of privileged or protected information or materials.

23. In order to promote the orderly conduct of depositions and to minimize the number of disputes that may require intervention of the Court or the re-opening of a concluded deposition, the following procedure will apply to potentially privileged documents at a deposition. If a Party determines that it wishes to make a claim of privilege on a document used at a deposition, it may assert the privilege when the document is first introduced and instruct the witness not to answer questions about the document, or it may allow the questioning about the document to proceed. Allowing the questioning about a

document to proceed does not, by itself, waive any claim of privilege over the document, or the information contained in the document, the questions, or the responses, provided that the Party that wishes to make a claim of privilege does so in writing within 14 days after the end of the deposition and indicates which portions of the transcript it proposes to redact at the same time that the witness provides corrections to the draft transcript. Nothing in this Order addresses whether privileges may be waived by using a document prior to deposition or trial to prepare a witness.

24. If a Party identifies a document that appears on its face or in light of facts known to the Party to be subject to another Party's claim of privilege, the Party identifying the potential claim of privilege is under a good-faith obligation to notify the Party holding the potential claim of privilege. Such notification will not waive the identifying Party's ability to subsequently challenge any assertion of privilege with respect to the identified document. If the Party holding the potential claim of privilege wishes to assert a claim of privilege, it shall provide notice in accordance with Paragraph 22 above within five business days of receiving notice from the identifying Party.

25. Upon receiving notice of a claim of privilege on a produced document, the receiving Party shall, in accordance with Fed. R. Civ. P. 26(b)(5)(B), promptly sequester the specified information and any copies it has and shall not use or disclose the information, except as provided by Fed. R. Civ. P. 26(b)(5)(B), until the claim is resolved. Copies of privileged documents or information that have been stored on electronic media that is not reasonably accessible, such as disaster recovery backup media, are adequately sequestered as long as they are not restored; if such data is restored, the receiving Party shall take steps to re-sequester the restored information. If the receiving Party disclosed the information before being notified, it shall take reasonable steps to prevent further use of such information until the claim is resolved.

26. If a Party wishes to dispute a claim of privilege asserted under this Order, such Party shall, within 14 days, meet and confer with the producing Party, pursuant to Local Rule 26.1.a. If the dispute is not resolved within 14 days, and after counsel have thoroughly met and conferred, the parties must place a joint call to the assigned magistrate judge's

chambers to explain the dispute and the parties' respective positions. The Party disputing the claim of privilege shall not assert, as a ground for disclosure, the fact or circumstances of the disclosure. Pending resolution of the claim, the Parties shall not use the challenged information for any other purpose and shall not disclose it to any person other than those required by law to be served with a copy of the sealed motion.

27. The Parties may stipulate to extend the time periods specified in Paragraphs 22, 23, 24, or 26 above.

28. Nothing in this Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the disclosing party that such materials have been produced.

29. The Party wishing to assert a claim of privilege retains the burden, upon challenge pursuant to Paragraph 26, of establishing the applicability of the claimed privilege.

30. This Order does not preclude a Party from voluntarily waiving any claims of privilege. The provisions of Rule 502(a) of the Federal Rules of Evidence apply when a Party uses privileged information to support a claim or defense.

**B.    Privilege Log**

31. Embedded e-mails.

(a)    An e-mail requires only one entry on the privilege log regardless of the number of embedded e-mails contained within the message body of the e-mail in question. For any e-mail that appears on the privilege log, the author, recipient(s), subject, and date fields may be populated with the metadata from the top-level message and is not required to include metadata from any e-mail embedded in the message body.

(b)    If an e-mail contains both privileged and non-privileged communications, the non-privileged communications must be produced, either by separately producing a copy of the non-privileged communications embedded in the privileged communication, or by producing a copy of the entire communication string with the privileged portions redacted.

     (c)    If an e-mail is withheld or any part of it is redacted for privilege, the privilege description on the privilege log must include the basis for withholding each embedded e-mail and the basis for each redaction (unless the communication is exempt from privilege logging pursuant to Paragraphs 32 and 34 below).

     (d)    If an e-mail is produced with redactions, the redactions must not obscure the headers (from, to, subject, sent date) of any embedded e-mails, unless the identity or contact information of a person is the information that is privileged or protected.

32.    The obligation to provide a log of privileged or work product materials pursuant to Rule 26(b)(5)(A) presumptively does not apply to:

     (a)    Communications exclusively between a party and its trial counsel;

     (b)    Work product created after December 28, 2023;

     (c)    Documents that are produced in partially redacted form with the redactions clearly marked;

     (d)    Internal communications within (i) a law firm, (ii) a legal assistance organization, (iii) a governmental law office, or (iv) a legal department of a corporation or another organization.

33.    <u>Deliberative Process Privilege Claims.</u> The United States' assertion of deliberative process privilege may be made by first identifying documents withheld as deliberative process privileged on the privilege log and, second, providing a declaration supporting that assertion within 20 days after service of the privilege log.

34.    No Party is obligated to log a document that is redacted or withheld solely based on a statutory preclusion of divulsion of information and not based upon a discovery privilege. The Parties agree this Paragraph applies to redaction or withholding based on the International Organizations and Immunities Act (IOIA).

## VI.   PRODUCTION

35.    <u>Procedures for Production</u>: Unless stated otherwise in a written agreement signed by each of the Parties, the following procedures apply to producing documents or ESI. Compliance with these procedures constitutes compliance with Federal Rule of Civil Procedure 34(b)(2)(E) for this matter.

    (a) <u>TIFF Plus Text Productions.</u> Except as stated otherwise below, ESI being produced by a Party shall be converted to 300 dpi, single-page, black-and-white (no shades of gray) TIFF images using CCITT Group IV compression. Where color images are required by this Order, the images shall be in the form of .JPG images. Each page must be branded with a unique Bates number, which must not be an overlay of the image. Unless otherwise agreed by the Parties, the TIFF images must be produced on optical media, USB hard drive, or by secure online file transfer, accompanied by: (1) an Opticon™ or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file (or JPG image file for color images) and extracted text file; (2) a "load file" containing the applicable metadata fields to be agreed upon by the Parties; and (3) Concordance® delimited text files containing extracted or OCR text. The load file must contain Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document. Nothing in this Order requires a Party to manually populate a metadata field (other than "Custodian" and "MD5Hash") if such fields cannot be extracted from a record or if the normal operation of an information system renders such metadata inaccurate, e.g., routinely updates "date created" or "date modified" metadata in the course of performing a designed function.

    (b) Paper documents.

    (1) Documents printed on paper that is larger than 11 x 17 inches may, at the Producing Party's discretion, be produced on paper. Documents produced on paper must be produced as they are kept in the ordinary course of business or must be organized and labeled to correspond to the categories in the request.

    (2) Documents printed on paper that is 11 x 17 inches or smaller must be scanned and produced on CD-ROM, DVD-ROM, or external hard drive.

    (c) Word, WordPerfect, and PDF files.

    (1) For Word, WordPerfect, and PDF files, the text files must contain the extracted text from the document, unless the document has been redacted during privilege review, in which case the text files may contain OCR text.

(2) For Word, WordPerfect, and PDF files that contain comments or tracked changes that are not part of the ordinary text, the TIFF images must be generated based on how the document appears when first opened using view settings contained in the file. The receiving party has the option, after reviewing the produced TIFF image, to request the native file.

(d) Microsoft PowerPoint files must be processed and produced as full color, half page, JPEG images with one slide per page. Any presenter notes must appear below each slide.

(e) E-mail.

(1) If the producing party redacts any part of an e-mail before producing it, OCR text may be provided in place of extracted text.

(2) E-mail attachments must be processed as though they were separate documents, and the load file must include a field in which the producing Party identifies, for each e-mail, the Bates range of any attachment;

(f) Microsoft Excel files and other spreadsheets must be produced in native file format in a separate folder on the production media. The load file must contain a field that identifies the file path of the native file corresponding to each document, and the Parties must provide a placeholder TIFF image that shows the name of the native file and has a Bates number. If an MS Excel or other spreadsheet file contains privileged text that must be redacted before production, the producing party will image the redacted spreadsheet showing all non-privileged hidden columns and provide OCR text for the file.

(g) Digital photographs must be produced as full color .JPG image files at their original resolution with Bates numbers branded onto them.

(h) Microsoft OneNote files may be converted to PDF files prior to processing, review, and production. The Parties need not collect or produce an entire OneNote notebook if only certain sections or pages in the notebook are responsive.

(i) GIS maps that are contained in a folder (with or without subfolders) may, at the Producing Party's discretion, be converted to a single ZIP file that contains all of the contents of that folder, even if the folder contains certain file types (e.g., JPG images)

that would ordinarily be produced using different procedures pursuant to this Paragraph. The Producing Party must provide a placeholder TIFF image that shows the name of the ZIP file and has a Bates number. After production of the ZIP file, the receiving party may initiate a meet-and-confer about whether any files contained with the ZIP file should be produced as separate documents with their own Bates numbers.

(j) With respect to any other kinds of electronic data, including data from databases, CAD drawings, GIS data, videos, etc., the Producing Party may produce the ESI in native format or a reasonably usable form, or may initiate a meet-and-confer to determine a reasonably useable form for the production. If the file is not one of the types described above, the Producing Party must provide a placeholder TIFF image that shows the name of the file and has a Bates number. If the Parties have not agreed on a production format for the ESI prior to the production, then Rule 34(b)(2)(E)(iii) shall not apply to the production.

36. The receiving party has the option, after reviewing a black-and-white TIFF image, to enquire whether the original document contained color and, if so, to request color .JPG images.

37. Except as stated above, a Party need not produce the same ESI in more than one form.

## VII. DISCOVERY LIMITATIONS

38. All limits on written discovery and depositions set forth in the Federal Rules of Civil Procedure, in local rules, or in orders of this Court remain in effect in this litigation, except as stated in this Order.

39. Depositions.

(a) Before a notice of deposition or subpoena pursuant to Rule 30(b)(6) is served, the serving party and the organization must confer in good faith about the number and description of the matters for examination and the identity of each person the organization will designate to testify. A subpoena to a nonparty to testify pursuant to Rule 30(b)(6) must request that the nonparty confer with the serving party.

(b) Regardless of whether there is a request before the deposition is completed, a deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (1) to review the transcript or recording; and (2) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(c) Objections at a deposition to the form of a question should be limited to a succinct statement of the basis of the objection (e.g., "objection, compound"). This shall be sufficient to preserve objections to the form of a question asked at a deposition in this action.

## VIII.  EXPERT DISCOVERY

40. Each Party shall not pursue through discovery, trial subpoena or otherwise:

(a) Notes taken by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B);

(b) Communications between a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) and a Party's representative—including, but not limited to, another witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B)—regardless of the form of the communications, except to the extent that the communications:

(1) Relate to compensation for an expert's study or testimony;

(2) Identify facts or data that a Party provided and that the expert considered in forming the opinions to be expressed; or

(3) Identify assumptions that a Party provided and that the expert relied upon in forming the opinions to be expressed.

41. Expert Depositions.

(a) Notwithstanding Fed. R. Civ. P. 26(b)(4)(E), the Parties shall bear the costs of their own testifying experts in responding to discovery and shall not require the Party seeking discovery to pay the other Party's testifying expert any fee for the time spent in responding to discovery.

(b) Notwithstanding Fed. R. Civ. P. 30(d)(1), a deposition of a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) is limited to 14 hours over

two consecutive days. Absent agreement of counsel, no deposition of a witness may last more than seven hours in any calendar day, excluding breaks.

42. Expert Productions.

(a) Documents collected or created by a retained expert are within the possession, custody, or control of the Party that has retained the expert. If documents collected by an expert, and not created by or for that expert in connection with this matter, are responsive to a request for production served during fact discovery, such documents must be produced during fact discovery unless privileged. Documents created by or for an expert may be withheld, without providing a privilege log, until the deadline described in subparagraph (c) below.

(b) Documents "considered" by the expert for the purposes of Fed. R. Civ. P. 26(a)(2)(B)(ii) means those documents that have been received, read, reviewed, or created by the expert for the purposes of forming the opinions set forth in the expert's report but only if the expert actually relies upon in forming his or her opinion.

(c) Documents considered by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) shall be produced within seven days after producing the witness's report. Such documents shall be produced in accordance with the requirements of Section VI of this Order, except that the Parties shall identify which witness(es) considered each document either in the load file produced along with the documents or in the witness' report. However, the Parties do not need to produce: (1) copies of documents that were previously produced in this matter, provided that the Party identifies the documents by Bates number before the expiration of the seven-day period described in this subparagraph; (2) copies of documents considered by experts that are publicly available (e.g., published materials one might find in a library), unless it would be less burdensome for the producing party to obtain a copy than it would be for the receiving party, and the receiving party requests a copy after receiving the expert report. All such requests shall be fulfilled within 10 days.

(d) Notwithstanding the provision of Fed. R. Civ. P. 26(a)(2)(B)(iii), the experts' disclosures under Rule 26(a)(2) need not include demonstrative exhibits the expert

may use at trial, provided that the facts and data supporting such trial demonstrative exhibits have been disclosed in the experts' report or in the documents considered by that witness. Each party agrees to provide the other parties with copies of any demonstrative exhibits before they are used at trial. The parties will seek to reach agreement on how long before trial demonstrative exhibits must be exchanged. If the parties are unable to reach agreement, one or more parties may ask the Court to set a deadline for exchanging copies of demonstrative exhibits.

## IX. ELECTRONIC SERVICE

43. Nothing in this Order supersedes local rules or ECF procedures with respect to service of papers via ECF.

44. Pursuant to Fed. R. Civ. P. 5(b)(2)(F), the Parties consent to service by electronic mail for papers within the scope of Rule 5(d)(1)(A) that need not be filed with the Court. Service by electronic mail must be made upon:

For Plaintiffs:
Marco Gonzalez
Marco@coastlaw.com
Livia Borak Beaudin
Livia@coastlaw.com
Patrick McDonough
Patrick@sdcoastkeeper.org
Kristen Northrop
Kristen@coastlaw.com

For USIBWC:
Andrew Coghlan
Andrew.Coghlan@usdoj.gov
Lucy Brown
Lucy.E.Brown@usdoj.gov
Kristen Sarna
Kristen.Sarna@usdoj.gov

45. The Parties may change the email distribution list for service of papers by written notice, including emailed notice, to the other Parties. Inadvertently omitting one or more email addresses from an email used to serve a paper does not render service ineffective, provided that service was made on at least one counsel of record for that party, as reflected in the Court's ECF service list.

46. Service by electronic mail is complete upon transmission. Papers that must be served on a particular day must be transmitted by 11:59:59 pm, Pacific Time.

47. If, after transmitting a paper, the transmitting party learns that delivery failed, it shall re-transmit the paper as soon as practicable, and the date on which the paper was served will relate back to the time of the original transmission. Nothing in this paragraph prejudices a Party from seeking an appropriate extension of deadlines, including one triggered by receipt of a paper served in accordance with this Order.

48. Nothing in this Order requires a party to serve a paper by electronic mail, provided that service otherwise complies with the Federal Rules of Civil Procedure. Nothing in this Order changes the requirements with respect to certificates of service.

## X.   MISCELLANEOUS PROVISIONS.

49. In the event that a non-party produces documents or ESI in response to a subpoena, the Party serving the subpoena shall make reasonable provision for prompt access to the produced materials by other parties.

50. <u>Costs of Document Production</u>. Unless the court orders otherwise for good cause shown, each Party shall bear the costs of collecting, processing, reviewing, and producing its own documents.

51. <u>Effect of Order</u>. The Parties' agreement to the terms of this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend the terms herein for good cause shown. Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

52. The Court may modify this Order in the interests of justice or for public policy reasons.

**IT IS SO ORDERED**.

Dated: April 1, 2025

Honorable Valerie E. Torres
United States Magistrate Judge