**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
THOMAS H. BIENERT, Jr., SBN 135311
*tbienert@bklwlaw.com*
DANIEL Z. GOLDMAN, SBN 342368
*dgoldman@bklwlaw.com*
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

*Attorneys for Defendant
Veolia Water West Operating Services, Inc*

**MAYER BROWN LLP**
MATTHEW D. INGBER*
*mingber@mayerbrown.com*
BENJAMIN D. BRIGHT*
*bbright@mayerbrown.com*
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

NICOLE A. SAHARSKY*
*nsaharsky@mayerbrown.com*
1999 K Street NW
Washington, D.C. 20006
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

MICHAEL A. OLSEN*
*molsen@mayerbrown.com*
AVI M. KUPFER*
*akupfer@mayerbrown.com*
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
* *pro hac vice forthcoming*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COASTKEEPER, a non-profit corporation; COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a non-profit corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>UNITED STATES INTERNATIONAL BOUNDARY AND WATER COMMISSION, an agency of the United States; MARIA-ELENA GINER, in her capacity as Commissioner of the International Boundary Water Commission; VEOLIA WATER WEST OPERATING SERVICES, INC., a Delaware Corporation,<br><br>        Defendants. | Case No. 24-cv-00663-JES-VET<br>Hon. James E. Simmons, Jr.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS**<br><br>Hearing Date: May 28, 2025<br>Hearing Time: 11:00 a.m.<br>Courtroom: 4B |

## **Table of Contents**

I.    FACTUAL BACKGROUND.................................................................................2

II.   PROCEDURAL HISTORY .................................................................................3

III.  LEGAL STANDARDS ......................................................................................5

IV.  STATUTORY FRAMEWORK .........................................................................6

V.    ARGUMENT......................................................................................................7

     A.    Plaintiffs' Claims Should Be Dismissed For Lack Of Standing....................7

     B.    Plaintiffs Do Not State Clean Water Act Claims Against Veolia.................9

          1.    Veolia Cannot Be Held Liable For Violating A Permit To Which It Is Not A Party .......................................................................9

          2.    Plaintiffs Fail To Allege That Veolia Discharged Pollutants ............11

               A.    Claim 1......................................................................................11

               B.    Claim 2......................................................................................12

               C.    Claim 3......................................................................................14

VI.  CONCLUSION................................................................................................14

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                    <u>Page(s)</u>

*Animal Legal Def. Fund v. Bernhardt*,
    No. 19-CV-06812-JST, 2020 WL 6802838 (N.D. Cal. May 18, 2020) ..........................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................5

*Assateague Coastkeeper v. Alan and Kristin Hudson Farm*,
    727 F.Supp.2d 433 (D. Md. 2010) ...............................................................................12

*Associated Gen. Contractors of Am. v. California Dep't of Transp.*,
    713 F.3d 1187 (9th Cir. 2013) .......................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................5

*Black Warrior Riverkeeper Inc. v. Thomas*,
    2013 WL 1663871 (N.D. Ala. Apr. 12, 2013)..............................................................11

*Campbell v. Jilik*,
    No. C09-1305-JCC, 2010 WL 2605239 (W.D. Wash. June 25, 2010) ..........................8

*Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*,
    844 F.2d 170 (4th Cir. 1988) .........................................................................................6

*Consejo de Desarrollo Economico de Mexicali v. United States*,
    417 F. Supp. 2d 1176 (D. Nev. 2006)............................................................................8

*County of Maui, Hawaii v. Hawaii Wildlife Fund*,
    590 U.S. 165 (2020)................................................................................................13, 14

*Draper v. H. Roberts Fam., LLC*,
    2009 WL 10668404 (N.D. Ga. Mar. 30, 2009) ......................................................11, 12

*Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles*,
    725 F.3d 1194 (9th Cir. 2013) .......................................................................................9

*Okanogan Highlands All. v. Crown Res. Corp.*,
    544 F. Supp. 3d 1092 (E.D. Wash. 2021)......................................................................6

*Pareto v. FDIC*,
  139 F.3d 696 (9th Cir. 1998) ...................................................... 5

*Puget Soundkeeper All. V. APM Terminals Tacoma, LLC*,
  2018 WL 2560995 (W.D. Wash. June 4, 2018) ........................... 12

*Puget Soundkeeper All. v. Port of Tacoma*,
  104 F.4th 95 (9th Cir. 2024) ...................................................... 9

*Puget Soundkeeper All. v. Total Terminals Int'l*,
  371 F. Supp. 3d 857 (W.D. Wash. 2019)................................... 12

*Roberts v. Corrothers*,
  812 F.2d 1173 (9th Cir. 1987) .................................................... 5

*S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*,
  541 U.S. 95 (2004)..................................................................... 6

*Sackett v. EPA*,
  598 U.S. 651 (2023)................................................................. 13

*Sacks v. OFAC*,
  466 F.3d 764 (9th Cir. 2006) ..................................................... 5

*Sierra Club v. Union Oil Co. of California*,
  853 F.2d 667 (9th Cir. 1988) ..................................................... 6

*Sierra Club, Hawaii Chapter v. City & Cnty. Of Honolulu*,
  415 F. Supp. 2d 1119 (D. Haw. 2005)....................................... 11

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .................................................... 5

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023)................................................................... 7

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)............................................................. 7, 8, 9

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)................................................................... 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................................ 7

**Statutes**

33 U.S.C. § 1311(a) ............................................................................... 6, 9, 11, 12, 14

33 U.S.C. § 1342(b) ........................................................................................................ 6

33 U.S.C. § 1362(7) ................................................................................................. 6, 13

33 U.S.C. § 1362(12) ............................................................................................... 6, 13

33 U.S.C. § 1365 ............................................................................................................. 3

33 U.S.C. § 1365(a) ................................................................................................... 6, 9

33 U.S.C. § 1365(f)(6) ................................................................................................... 6

Section 1311 ................................................................................................................... 6

Section 1365(f)(7) ............................................................................................ 6, 10, 14

U.S. Const. art. III, § 2, cl. 1.  A ................................................................................. 7

**Rules**

Rule 12(b)(1) ............................................................................................................. 1, 5

Rule 12(b)(6) ............................................................................................................. 1, 5

TABLE OF AUTHORITIES

## I.    INTRODUCTION

This case concerns a cross-border environmental issue caused by untreated wastewater entering daily into the United States from Tijuana, Mexico. The South Bay International Wastewater Treatment Plant (the "Plant"), which Defendant United States International Boundary and Water Commission ("USIBWC") owns and controls, performs an important role in wastewater treatment along the United States border; the Plant receives and treats a portion of Tijuana's sewage—mostly from the city's central core. In recent years, Tijuana's population has substantially increased and wastewater flows have exceeded the Plant's design capacity. Events such as Hurricane Hilary in 2023 and ongoing border construction in Tijuana have exacerbated the problem by adding sediment and garbage that have damaged the Plant. For its part, Veolia Water West Operating Services, Inc. ("Veolia"), which operates the Plant at USIBWC's direction, has recommended millions of dollars in repairs and improvements that have not yet been implemented. Indeed, the Court has recognized that a political or legislative solution is necessary. *See* Dkt. 31 at 17:4. ("[S]omebody much higher than . . . this court [will need to] step in.").

Against this backdrop, San Diego Coastkeeper ("Coastkeeper") and Coastal Environmental Rights Foundation ("CERF," and together with Coastkeeper, the "Plaintiffs") lay the blame on Veolia for USIBWC's purported violations of its National Pollutant Discharge Elimination System ("NPDES") Permit, Dkt. 48-2 ("Permit"). The Court granted Plaintiffs leave to file the First Amended Complaint ("FAC") to attempt to plead more particularized allegations against Veolia.

The claims against Veolia in the FAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) for several reasons. First, the FAC does not allege facts showing that Plaintiffs have Article III standing. Plaintiffs do not sufficiently allege that Coastkeeper or CERF, or any of their members, suffered injuries-in-fact from the alleged Clean Water Act violations. Indeed, the FAC contains no allegations whatsoever regarding how, if at all, individual members have been harmed.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

1    Second, the claims against Veolia fail because they allege violations of the NPDES

2    Permit.  Plaintiffs cannot pursue that theory against Veolia, which is not the permitholder.

3    Further, Plaintiffs do not allege facts showing that Veolia discharged pollutants into waters

4    of the United States.  Plaintiffs do not allege that Veolia controls effluent discharges or dry

5    weather flows.  Nor do Plaintiffs allege facts showing that the dry weather flows are

6    discharges under the Clean Water Act.  And the alleged reporting errors are not a discharge

7    at all.

8        For these reasons, Veolia respectfully requests that the Court dismiss the FAC with

9    prejudice.

10   **II.    FACTUAL BACKGROUND**

11       In 1990, USIBWC and its Mexican counterpart entered into an agreement that led to

12   the construction of the Plant and associated infrastructure on the U.S. side of the

13   international border.  *See* Dkt. 48-2 at F-3.  The Plant was built on a 75-acre site

14   immediately north of Tijuana's main wastewater pumping station.  *Id*. at F-4.  The Plant is

15   designed to treat up to 25 million gallons per day ("MGD") of raw sewage flows that exceed

16   the capacity of Tijuana's sewage treatment and conveyance facilities, including some low-

17   volume transboundary flows in canyons and gullies that empty from Tijuana into lower-

18   lying canyons in the United States.  *Id.*  The Plant and associated infrastructure consists of:

19   the physical wastewater treatment plant; five diversion structures several of which are in

20   canyons (*i.e.*, "canyon collectors"); two pumps stations that send wastewater from the

21   canyon collectors to the Plant; two junction boxes that are intended to control flow to the

22   Plant; the South Bay Land Outfall, a tunnel that sends treated effluent from the Plant to a

23   point near the coastline; and the South Bay Ocean Outfall ("SBOO"), a pipe that connects

24   to the tunnel and discharges treated effluent 3.5 miles offshore at 90 feet below sea level.

25   *See id*. at F-3.

26       USIBWC owns the Plant.  *Id.* at F-3.  The South Bay Land Outfall and SBOO are

27   jointly owned by USIBWC and the City of San Diego.  *Id.*  USIBWC operates and maintains

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

the South Bay Land Outfall.  *Id.*  USIBWC and the City of San Diego jointly operate and maintain SBOO.  USIBWC privately contracts with Veolia to operate and maintain the other facilities.  *See id.* at F-4.

Pursuant to authority delegated by the U.S. Environmental Protection Agency ("EPA") and the State of California, the San Diego Regional Water Quality Control Board issued the NPDES Permit that authorizes USIBWC to discharge a monthly average of up to 25 MGD of treated effluent originating from Tijuana to the Pacific Ocean through the SBOO.  *See generally id.*  The Board also enforces the Permit.  *See generally* Dkt. 48-2 § 2; Dkt. 13-3, Ex. A at ECF p. 12 of 99.

USIBWC is the only named "Discharger" in the Permit.  Dkt. 48-2 at p. 1.  The requirements in the Permit apply only to the Discharger.  For example, the Permit requires that the "Discharger . . . properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the Discharger to achieve compliance with the conditions of the Permit.'"  FAC ¶ 63 (quoting Dkt. 48-2, Att. D  § 1.4).  The Permit contains "Effluent Limitations" that consist of pollutant parameters and respective maximum limits based on various monthly, weekly, and daily limit calculations.  Dkt. 48-2 § 4.

The Permit also contains a "Discharge Prohibitions" section.  Dkt. 48-2 § 3.  That section requires "[t]he Discharger [to] comply with Discharge Prohibitions" in several state water quality control plans.  *Id.* § 3.2-3.3.  The section also requires the Discharger not to "discharge . . .waste from the [Plant]" unless it has been treated.  *Id.* § 3.1.  To comply with that requirement, the Discharger must implement a "Spill and Transboundary Flow Event Prevention and Response Plan" "with respect to dry weather canyon collector Spill Events." *Id.* § 3.1.1.

## III.  PROCEDURAL HISTORY

In April 2024, Plaintiffs sued USIBWC and Veolia under the Clean Water Act's citizen-suit provision, 33 U.S.C. § 1365.  Dkt. 1 ("Compl.").  Plaintiff Coastkeeper is

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

allegedly a non-profit corporation "committed to protecting and restoring San Diego's coastal and inland waters and the communities who depend on them."  Compl. ¶ 38. Plaintiff CERF is allegedly a non-profit corporation "established to advocate for the protection and enhancement of coastal natural resources and the quality of life for coastal residents."  *Id.* ¶ 39.  The only standing allegations in the original complaint were that the "failure to report and monitor impedes Plaintiffs' members' ability to fully use and enjoy [the Tijuana River and Estuary and the Pacific Ocean] for aesthetic, recreational, scientific, educational, and spiritual purposes"; and that the "polluted discharges degrade water quality and harm aquatic life . . . and thus impair Plaintiffs' members' use and enjoyment of those waters." *Id.* ¶¶ 41-42.

The original complaint alleged five causes of action under the Clean Water Act against USIBWC and Veolia:  discharges in violation of the Permit's effluent limitations; discharges in violation of the Permit's discharge prohibitions, which allegedly impacted the Tijuana River and Estuary and the Pacific Ocean; discharges in violation of the Permit's surface water limitations; failure to submit self-monitoring reports in accordance with the Permit; and failure to timely submit the Tijuana River Valley Monitoring Plan.

In June 2024, Veolia moved to dismiss the complaint and USIBWC moved to stay the proceedings.  Dkts. 13, 15.  At the August 2024 hearing on these motions, the Court stayed all of Plaintiffs' claims and ordered USIBWC and Plaintiffs to submit periodic status reports.

In February 2025, the Court granted in part Veolia's motion to dismiss the original complaint.  The Court held that the complaint "conflat[ed] . . Veolia with IBWC," which "amount[ed] to impermissible shotgun pleading."  Dkt. 40 at 13.  In March 2025, Plaintiffs filed the FAC, which contains the same standing allegations as the original complaint. *Compare* Compl. ¶¶ 38-44, *with* FAC ¶¶ 43-49.  In light of the Supreme Court's decision in *San Francisco v. EPA*, 145 S. Ct. 704, 720 (2025), Plaintiffs abandoned their surface-water claim and no longer rely on certain permit requirements for their canyon-collector

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

claim.  They also abandoned their claim about the Tijuana River Valley Monitoring Plan. Accordingly, three causes of action against Veolia remain in the FAC:

- Claim 1, which alleges that Veolia is responsible for pollutant discharges that exceed the Permit's effluent limits, FAC ¶ 201;

- Claim 2, which alleges that Veolia is responsible for dry weather canyon collector flows that exceed the Permit's discharge limits, FAC ¶ 215; and

- Claim 3, which alleges that Veolia failed to upload self-reporting monitoring reports in violation of the Permit.  FAC ¶ 224.

This motion is made following the conferences of counsel that took place on March 28, 2025 and April 3, 2025.

## IV.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must "allege facts in [the] Complaint that, if proven, would confer standing upon him. *Sacks v. OFAC*, 466 F.3d 764, 771 (9th Cir. 2006).

Under Federal Rule of Civil Procedure 12(b)(6), a Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal quotation marks and brackets omitted).  The complaint "must contain allegations of underlying fact sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  A court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## V.    STATUTORY FRAMEWORK

The Clean Water Act provides that "[e]xcept as in compliance with this section [1311] and sections 1312, 1316, 1317, 1328, 1342, and 1344 of [Title 33], the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a). A "discharge of pollutants" is defined as "any addition of any pollutant to navigable waters from any point source." *Id*. § 1362(12)(A). The term "navigable waters" means "waters of the United States." *Id*. § 1362(7).

NPDES permits authorize discharges of pollutants but "place limits on the type and quantity of pollutants that can be released into the Nation's waters." *S. Fla. Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 102 (2004). The NPDES Permit that governs USIBWC's discharges from the Plant was authorized by the Board pursuant to authority granted under 33 U.S.C. § 1342(b).

The Clean Water Act authorizes citizen suits "against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under [Title 33, Chapter 26]." *Id*. § 1365(a)(1). An "effluent standard or limitation" generally includes "a unlawful act under section 1311" and "a permit or condition of a permit issued under section."[1] *Id*. § 1365(f).

To survive a motion to dismiss, a plaintiff alleging a claim under the Clean Water Act must allege that the violations are ongoing, pointing either to "violations that continued on or after the date the complaint was filed" or to "evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Sierra Club v. Union Oil Co. of California*, 853 F.2d 667, 671 (9th Cir. 1988) (quoting *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd*., 844 F.2d 170, 171–72 (4th Cir. 1988)).

---

[1]    Plaintiffs cite 33 U.S.C. § 1365(f)(6) in paragraph 59 of the FAC. Prior to December 2018, the "permit or condition of a permit" subpart was contained in Section 1365(f)(6); it is now contained in Section 1365(f)(7). *See Okanogan Highlands All. v. Crown Res. Corp*., 544 F. Supp. 3d 1092, 1097 n. 1 (E.D. Wash. 2021).

## VI.    ARGUMENT

### A.    Plaintiffs' Claims Should Be Dismissed For Lack Of Standing.

Article III empowers the federal courts to decide only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1.  A case or controversy exists only if the plaintiff has standing, a requirement that "ensures that [the] federal courts decide only 'the rights of individuals,'" rather than "exercise general legal oversight." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Where, as here, each Plaintiff is an organization, "the standing requirements of Article III can be satisfied in two ways": (1) "the organization can claim that it suffered an injury in its own right," or (2) the organization "can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).

The FAC does not allege that either Plaintiff organization will "suffer an injury in its own right." *Id.*  Rather, the FAC asserts that the alleged NPDES Permit violations "have been and will continue to . . . adversely affect[]" the "interests of Plaintiffs' members." FAC ¶ 48.  To establish representational standing, an organization must show that "its members would otherwise have standing to sue in their own right"; "the interests it seeks to protect are germane to the organization's purpose"; and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Associated Gen. Contractors of Am. v. California Dep't of Transp*., 713 F.3d 1187, 1194 (9th Cir. 2013).  To show that its member would otherwise have standing, an organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm," *Summers v. Earth Island Inst*., 555 U.S. 488, 497 (2009). The "requirement of naming the affected members has never been dispensed with in light of statistical probabilities."  *Id*. at 498–99.

Here, the FAC is devoid of any "specific allegations" regarding Plaintiffs' members, much less "specific allegations" demonstrating that particular members suffered injuries-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

in-fact as a result of each of the alleged Permit violations.  The FAC merely includes allegations that "Plaintiffs' members' ability to fully use and enjoy the [Tijuana River and Estuary and the Pacific Ocean] for aesthetic, recreational, scientific, educational, and spiritual purposes" is "impede[d], and "Plaintiffs' members use and enjoyment of those wasters" is "impair[ed]."  FAC ¶¶ 46-47.

These generalized allegations about Plaintiffs' unnamed "members" clearly do not meet the requirements to "nam[e] the affected members" and "make specific allegations establishing that [they] . . . suffered or [will] suffer harm." *Summers*, 555 U.S. at 497–98. The Court should dismiss Plaintiffs' claims for failure to adequately allege representational standing because the FAC lacks "specific" allegations establishing that even one of the Plaintiffs' alleged individual members has suffered an injury-in-fact.  *See Animal Legal Def. Fund v. Bernhardt*, No. 19-CV-06812-JST, 2020 WL 6802838, at *4 (N.D. Cal. May 18, 2020) (even though plaintiff, an animal rights organization, alleged that its members derived "recreational, aesthetic, and conservation benefits" from the "conservation of . . . endangered species," the complaint was dismissed for lack of standing because the plaintiff failed "to demonstrate injury-in-fact with respect to its members"); *Campbell v. Jilik*, No. C09-1305-JCC, 2010 WL 2605239, at *5 (W.D. Wash. June 25, 2010) ("Because the complaint fails to identify any of the group's members, the group cannot invoke this Court's jurisdiction in order to litigate the rights of injured members."); *Consejo de Desarrollo Economico de Mexicali v. United States*, 417 F. Supp. 2d 1176, 1187-88 (D. Nev. 2006) (dismissing claims where organization "ha[d] not alleged an injury its members suffer or will suffer as a result of the . . . alleged violation[s]").

The Court thus should dismiss Plaintiffs' claims for failure to adequately allege representational standing.  The FAC lacks any "specific" allegations that "at least one identified member" of Plaintiffs has standing to sue in his or her own right, *i.e.*, that he or she has suffered an injury-in-fact, that is fairly traceable to Veolia's alleged conduct, and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

that a "favorable judicial decision" will redress the alleged injury. *Summers*, 555 U.S. at 493, 497.

**B.    Plaintiffs Do Not State Clean Water Act Claims Against Veolia.**

The citizen-suit provision authorizes suit against "any person . . . who is alleged to be in violation of . . . an effluent standard or limitation" under the Clean Water Act.  33 U.S.C. § 1365(a).  Section 1365 defines "effluent standard or limitation" to include an NPDES "permit or condition of a permit" and "the discharge of any pollutant by any person" "[e]xcept as in compliance with" the Clean Water Act. *Id.* §§ 1311(a), 1365(f)(1), (7).  Plaintiffs fail to allege facts showing that Veolia violated these requirements.

**1.    Veolia Cannot Be Held Liable For Violating A Permit To Which It Is Not A Party.**

Each of Plaintiffs' claims against Veolia is premised on a violation of the Permit. *See* FAC ¶ 201 ("As a result of Veolia Water's failure to properly operate and maintain the SBIWTP, the [Plant] routinely discharges pollutants in violation of the Permit's effluent limitations."); *id.* ¶¶ 213-214 ("As a result of Veolia Water's failure to properly operate and maintain the canyon collectors and pump stations, dry weather transboundary flows . . . are routinely not captured by the canyon collector for treatment at the [Plant] and disposal through the SBOO. . . . These discharges constitute Spill Events and are subject to the Permit's Discharge Prohibition 3.3."); *id.* ¶ 224 ("Where it assumed USIBWC's reporting responsibilities, Defendant Veolia Water failed to upload the [Plant's] self-monitoring reports to CIWQS as required by the Permit.").  But Veolia cannot be held liable under the Clean Water Act for alleged violations of the NPDES Permit.

A NPDES permit is "treated like any other contract." *Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013).  An "individual [NPDES] permit . . . authoriz[es] a particular entity to discharge a pollutant in a specific place" and places conditions on that authorization. *Puget Soundkeeper All. v. Port of Tacoma*, 104 F.4th 95, 101 (9th Cir. 2024).  Like any other contract, the conditions in a NPDES permit cannot be

9

1   enforced against a third party.  Plaintiffs thus cannot state a Clean Water Act claim against

2   Veolia for violating "condition[s] of a permit" to which Veolia is not a party.  33 U.S.C.

3   § 1365(f)(7).

4          The NPDES Permit here reflects that basic contracting principle.  The Permit defines

5   the "Discharger" as "USIBWC"; specifies certain "Discharge Prohibitions"; and provides

6   that "[t]he Discharger must comply with [those] Discharge Prohibitions."  Dkt. 48-2 Cover

7   Page & §§ 3.1-3.3.  The Permit also provides that "[t]he Discharger must comply with all

8   of [its] terms, requirements, and conditions."  *Id.*, Att. D § 1.1.1.  The Permit's requirements

9   to "properly operate and maintain all facilities and systems of treatment and control" thus

10  apply only to "[t]he Discharger."  FAC ¶ 63 (quoting Dkt. 48-2 Att. D § 1.4).  Thus, as

11  Plaintiffs recognize, it is USIBWC whom "the Permit requires . . . to capture . . . wastewater

12  flows from Mexico, divert these flows to the [Plant], and treat them to specific standards

13  enumerated in the Permit, before discharging [them] through the SBOO to the Pacific

14  Ocean."  FAC ¶ 17.  The Permit mentions Veolia only twice, in a background "Fact Sheet"

15  that describes Plant operations.  *See id*. Att. F §§ 1.1, 2.1.  Those passing references

16  distinguish between Veolia and the "Discharger" that is subject to the conditions in the

17  Permit.  *Id.* Att. F § 1.1 ("The Discharger contracts with Veolia . . . to operate and maintain

18  other facilities.")

19         Accordingly, the allegations in the FAC that "the Defendants" and "the Facility . . .

20  must comply" with "the terms of the Permit" is plainly incorrect.  FAC ¶¶ 61, 90, 121; *see

21  also id.* ¶ 70.  As Plaintiffs elsewhere acknowledge, it is only "the *discharger* [who] must

22  comply" with the Permit, *id.* ¶ 58 (emphasis added), and the only "Discharger" under the

23  Permit is USIBWC.  Plaintiffs therefore cannot state claims against Veolia for "fail[ing] to

24  comply with" the condition in the Permit relating to effluent limits, canyon collector dry

25  weather flows, and self-reporting.  FAC ¶¶ 204, 215, 228.

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

### 2. Plaintiffs Fail To Allege That Veolia Discharged Pollutants.

Plaintiffs may attempt to recast their claims as targeting the "discharge of . . . pollutant[s]" generally, rather than violations of the specific conditions in the NPDES permit. 33 U.S.C. § 1311(a). As discussed above, that would run contrary to the actual allegations in the FAC. Regardless, none of the claims alleges fact showing that Veolia discharged pollutants in violation of the Clean Water Act.

#### a. <u>Claim 1</u>

Claim 1 alleges that Veolia caused discharges of treated effluent through the SBOO that exceeded the pollutant limitations in the Permit. *See* FAC ¶¶ 196-208. Yet courts have recognized that a plaintiff generally cannot sue "a non-permit holder for a permit based violation" under a discharge theory because it is the permittee who "control[s] the discharge of pollutants." *Black Warrior Riverkeeper Inc. v. Thomas*, 2013 WL 1663871, at *3–4 (N.D. Ala. Apr. 12, 2013); *see also, e.g.*, *Draper v. H. Roberts Fam., LLC*, 2009 WL 10668404, at *21 (N.D. Ga. Mar. 30, 2009); *Sierra Club, Hawaii Chapter v. City & Cnty. Of Honolulu*, 415 F. Supp. 2d 1119, 1128 (D. Haw. 2005).

The Veolia-USIBWC contract reflects that understanding. That contract, which is referenced in the FAC (¶¶ 154-155), makes clear that Veolia acts solely at the USIBWC's direction. The contract mandates that Veolia personnel cannot "[b]e placed in a position of command, supervision, administration or control over USIBWC personnel." *See Harrison, v. Veolia Water West Operating Servs.*, No. 3:24-cv-01584-AJB-BLM (S.D. Cal. Nov. 15, 2024), Dkt. 19-3, Ex. C at p. 200. USIBWC's contracting officer has final approval authority for Veolia's workplan, hiring of key personnel, recruitment, staffing, firing, and the Plant's safety plan and emergency preparedness plan. *Id*., at Ex. C at pp. 215, 220-22, 238. The contracting officer also has discretion to issue stop-work orders. *Id*., Ex. C at p. 197. In addition, the contract makes clear that only USIBWC has authority to approve and fund "major repairs, refurbishments, replacements, and upgrades in future years." *Id*., Ex.

C at p. 227.  Indeed, the FAC states that USIBWC "control[s] Veolia Water operations at the [Plant]."  FAC ¶ 183.

Although several decisions have held that non-permittees can be held liable for discharging pollutants beyond the limits of a permit under Section 1311(a), those cases did not involve non-permittee contractors like Veolia who does not "control . . . operations at the Facility" where the alleged discharged occurred.  *See, e.g.*, *Puget Soundkeeper All. v. Total Terminals Int'l*, 371 F. Supp. 3d 857 (W.D. Wash. 2019) (non-permittee allegedly had "responsibility, power, and capacity" over facility); *Puget Soundkeeper All. V. APM Terminals Tacoma, LLC*, 2018 WL 2560995, at *5 (W.D. Wash. June 4, 2018) (similar); *Assateague Coastkeeper v. Alan and Kristin Hudson Farm*, 727 F.Supp.2d 433, 442-43 (D. Md. 2010) (corporation had extensive control over permitholder's operations); *Draper v. H. Roberts Fam., LLC*, 2009 WL 10668404, at *12 (N.D. Ga. Mar. 30, 2009) (defendant had "[c]ontrol over the activities in question").  In contrast with the non-permittees in those cases, Plaintiffs specifically allege that USIBWC "*control*[*s*] Veolia Water operations at the" Plant, FAC ¶ 183 (emphasis added), and as set out above, the USIBWC-Veolia contract is consistent with that allegation.

Accordingly, Plaintiffs fail to state a discharge claim against Veolia with respect to discharges of treated effluent through the SBOO that exceeded the pollutant limitations in the Permit.

### b.  Claim 2

Claim 2 alleges that Veolia caused "dry weather flows" of wastewater in excess of "the canyon collector[s'] maximum design capacity," which is prohibited under the Clean Water Act.  *See* FAC ¶¶ 209-19.  Those allegations are insufficient for the reasons stated above with respect to Claim 1, namely, because Plaintiffs allege that USIBWC controls Veolia's operations at the Plant.  They are also insufficient for a separate, independent reason: Plaintiffs fail to allege that the dry weather flows constitute "discharges of pollutants" under the Act.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

1   The Act defines "discharges of pollutants" as "any addition of any pollutant . . . from

2   any point source" to "navigable waters," *i.e.*, "waters of the United States" ("WOTUS").

3   33 U.S.C. § 1362(7), (12).   WOTUS include only "relatively permanent, standing or

4   continuously flowing bodies of water forming geographical features that are described in

5   ordinary parlance as streams, oceans, rivers, and lakes." *Sackett v. EPA*, 598 U.S. 651, 671

6   (2023).  Discharges into WOTUS occur in two ways: "a direct discharge from a point source

7   into navigable waters" or "the functional equivalent of a direct discharge." *County of Maui,*

8   *Hawaii v. Hawaii Wildlife Fund*, 590 U.S. 165, 183 (2020).

9       Plaintiffs allege neither a direct discharge nor the functional equivalent of one.  First,

10  plaintiffs do not allege that the canyon collectors' dry weather flows discharge directly into

11  "relatively permanent, standing or continuously flowing bodies of water." *Sackett*, 598 U.S.

12  at 671.  Rather, they allege that the dry weather flows "discharge[] waste into the Tijuana

13  River *Valley*" and from there "continue north into the . . . Estuary, the Tijuana River, and

14  the Pacific Ocean."  FAC ¶¶ 101, 119 (emphasis added).  Plaintiffs do not allege facts that

15  plausibly explain how dry-weather spillovers from the canyon collectors purportedly end

16  up in the Tijuana River and the Pacific Ocean.  But regardless, nowhere do Plaintiffs allege

17  that the dry weather flows directly connect to the Tijuana River and Pacific Ocean via a

18  relatively permanent, continuously flowing body of water.

19      The language of the Permit is consistent with the understanding that dry weather

20  flows do not connect directly to a permanent, continuously flowing body of water.  The

21  definition of a "Canyon Collector Transboundary Flow Event" does not state that a flow

22  event is a discharge into WOTUS.  Dkt. 48-2, § 6.3.2.1.1.2.  When a flow event is not

23  captured by the facility, it becomes a "Spill Event," which includes not only "discharge[s],"

24  but also "any other type of emission or release . . . of waste." *Id.* § 6.3.2.1.1.1.  Other Permit

25  terms likewise are consistent with the understanding that dry weather canyon collector spills

26  are not direct discharges into WOTUS. *See, e.g., id.* § 6.3.2.1.2.1.3 (noting the goal of

27  "prevent[ing] . . . adverse impacts to the environment from Spill and Transboundary Flow

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

Events, including *but not limited to*, adverse impacts to waters of the U.S." (emphasis added)); *id.*, Att. F § 2.1 (noting that flows bypassing the canyon collectors "continue north in the natural drainages, *potentially* polluting the Tiuana River Valley and Estuary, the Tijuana River, and the Pacific Ocean" (emphasis added)).

Second, plaintiffs do not allege the "functional equivalent of a direct discharge" into WOTUS. *County of Maui*, 590 U.S. at 183. The FAC contains no allegations about, for example, the "transit time" between when the dry weather flows occurred and when the pollutants reached the WOTUS; the "distance [the pollutant] traveled" to the WOTUS; "the nature of the material through which the pollutant travel[ed]"; "the extent to which the pollutant [was] diluted or chemically changed as it travel[ed]; "the amount of pollutant entering the [WOTUS] relative to the amount of the pollutant that [left] the" location of the dry weather spills; "the manner by or area in which the pollutant enter[ed] the" WOTUS; or "the degree to which the pollution (at that point) . . . maintained its specific identity." *Id.* at 184-85. Such allegations are necessary to establish that the dry weather flows were the functional equivalent of a direct discharge.

In sum, the FAC does not allege that the dry weather flows amount to a direct discharge into WOTUS or the functional equivalent of a direct discharge. Accordingly, Plaintiffs do not state a Clean Water Act discharge claim against Veolia.

### c.   Claim 3

Claim 3 alleges that Veolia failed to upload self-monitoring reports to CIWQS as required by the NPDES Permit. *See* FAC ¶¶ 220-32. But that is not a "discharge" and as discussed, the Permit's "condition[s]" cannot be enforced against Veolia since it is not the permittee. 33 U.S.C. §§ 1311(a), 1365(f)(7). Accordingly, Claim 3 fails to allege facts showing that Veolia violated the Clean Water Act.

## VII.  CONCLUSION

For the foregoing reasons, Veolia respectfully requests that the Court dismiss the FAC with prejudice.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA
WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

1     Dated: April 7, 2025         **BIENERT KATZMAN**

2                               **LITTRELL WILLIAMS LLP**

3

4                            By: */s/ Daniel Z. Goldman*

5                                   Thomas H. Bienert, Jr.

6                                   Daniel Z. Goldman

7

8     Dated: April 7, 2025         **MAYER BROWN LLP**

9

10                          By:     */s/ Matthew D. Ingber*

11                                   Matthew D. Ingber

                                  Benjamin D. Bright

12                                   Michael Olsen

13                                   Avi M. Kupfer

                                  Nicole A. Saharsky

14

15                                   *Attorneys for Defendants*
                                  *Veolia Water West Operating Services, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT VEOLIA WATER WEST OPERATING SERVICES, INC.'S MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of the foregoing pleading to the CM/ECF registrants who have entered their appearance as counsel of record.


                                        */s/ Miriah Edwards*
                                        Miriah Edwards